**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MICHAEL FOURTE, | |
| Petitioner, | |
| v. | Civil Action No. 18-2023 (BAH) |
| RICHARD V. SPENCER, in his official capacity as Secretary of the Navy and his successors in office, | Chief Judge Beryl A. Howell |
| Respondent. | |

**MEMORANDUM OPINION**

The *pro se* petitioner, Michael Fourte, is a Reserve Naval Officer with 20 years of service in the United States Navy, including over 16 years of active duty service. Pet. for Writ of Habeas Corpus and Compl. for Declaratory and Injunctive Relief ("Pet.") ¶ 11, ECF No. 1. Currently deployed in Africa on active duty orders, *id.* ¶¶ 39, 44, Fourte seeks a writ of habeas corpus requiring the respondent, Richard V. Spencer, the Secretary of the Navy, to demobilize him, *id.* at 31, and restore him to his previous active duty assignment in Washington, D.C., *see* Civil Case Form for Habeas Petitions Under 28 U.S.C. § 2241 ("Habeas Form") at 8 (Request for Relief), ECF No. 1. According to Fourte, he is entitled to this reassignment because he has been unlawfully ordered to duty in Africa, in violation of a Navy "directive . . . mandat[ing] that the Navy will not involuntarily mobilize reservists with over 16 years of active service without justification and a . . . waiver." Pet. at 1. For the reasons discussed below, the pending habeas petition seeking a judicial order to countermand a military deployment order and to reassign an active duty Naval officer to a duty station in Washington, D.C., crosses the boundaries of justiciability and is therefore dismissed.

1

## I. BACKGROUND

Fourte previously filed a habeas petition, in the form of a complaint, in this Court challenging the same allegedly illegal military deployment order, and that petition was transferred to the United States District Court for the District of South Carolina ("D.S.C."). *See Fourte v. Spencer*, No. 18-cv-1847, Mem. & Order at 1– 6 (D.D.C. Aug. 10, 2018) (D.D.C. order transferring first habeas petition to D.S.C. ("D.D.C. 2018 Transfer Order")). The petition was ultimately dismissed without prejudice after the transfer. *See Fourte v. Spencer*, No. 18-cv-2212, 2018 WL 3845136, at *1 (D.S.C. Aug. 12, 2018) (D.S.C. Magistrate Judge's report recommending dismissal of Fourte's first habeas petition ("D.S.C. Magistrate's 2018 R&R")); *Fourte v. Spencer*, No. 18-cv-2212, 2018 WL 3829232, at *1–3 (D.S.C. Aug. 13, 2018) (D.S.C. Order and Opinion dismissing Fourte's first habeas petition ("D.S.C. 2018 Dismissal Order")). The relevant facts and procedural history are set out below as context for resolution of the pending petition.

### A. Fourte's Deployment to Active Duty in Africa

Fourte is a Navy reservist, who has "over 16 years of total active duty service." Pet'r's Decl. Supp. Writ of Habeas Corpus ("Pet'r's Decl.") (Aug. 27, 2018) ¶ 3, ECF No. 1. On May 31, 2018, while stationed on "active duty" at the Washington Navy Yard in Washington, D.C., he was "ordered to active duty" at a different "assignment in Africa" to serve as an Officer in Charge of a military base for one year. *Id.* ¶¶ 4, 6–7; Pet. ¶¶ 15–16, 22. Within a week, on June 5, 2018, Fourte "contacted the regional Judge Advocate General for Region Mid-Atlantic Reserve Component Command" to explain that "the [respondent] . . . needed a waiver and justification in order to mobilize" him for the Africa assignment because he would have over 16 years of active duty service by the time of the assignment. Pet'r's Decl. ¶¶ 8, 17. The next day, Fourte was informed that the respondent planned to seek such a waiver. *Id.* ¶ 9.

Through his chain of command, Fourte learned, on June 15, 2018, that a "waiver had been approved," *id.* ¶ 12, and approximately one week later, he obtained a copy of the waiver, *id.* ¶ 14; Pet. ¶ 30, which had been issued on June 7, 2018, Pet., Ex. A, Department of the Navy, Navy Personnel Command Waiver for Partial Mobilization Orders for Michael Fourte (June 7, 2018), ECF No. 1-1. In compliance with "the Africa orders," Fourte was "mobilized to active duty involuntarily" on July 20, 2018, and he reported to Fort Jackson in South Carolina for training. Pet. ¶¶ 39, 41.

The Navy has explained that that the position for which Fourte was chosen, Officer in Charge, is "[r]esponsible for the overall safety, security, and well-being of the [base] and all troops therein." Resp't's Resp. to Order to Show Cause ("Resp't's Resp.") at 5, ECF No. 9. The Navy advertised this position, but when no volunteers applied, the Navy ran a search within its database and Fourte was the only Reservist who satisfied each of the position's requirements. *See id.*, Ex. E., Decl. of Quinton S. Packard, Commander, Navy Reserve Forces Command ("Packard Decl.") (Aug. 10, 2018) ¶¶ 4, 5, 8, ECF No. 9-5. Specifically, Fourte was the "first fully-qualified Sailor on the list of the top 10 qualified Sailors to fill this position," and the only officer who satisfied the "command experience requirement" and held the required security clearance. *Id.* ¶ 8.

Fourte believes that the waiver paperwork for the Africa deployment was "non-compliant" because the Navy "did not . . . conform to the [Navy's] own procedures for waivers" in Chief of Naval Operations Instruction 1001.27.[1] Pet. ¶¶ 25–26. For example, in his view, the

---

[1] Notably, Fourte uses the Navy's waiver process as a sword in his habeas petitions, when the actual purpose of the waiver process is to shield the Navy from inadvertent, unnecessary spending. Navy Reserve officers accumulating eighteen years of active-duty service obtain "sanctuary" status, which protects them from involuntary release from active duty before the completion of twenty years of service and thereby guarantees active-duty status until crossing the twenty-year threshold for regular active-duty, as opposed to lower non-regular, retirement pay. *See* 10 U.S.C. §§ 6323, 6327(a), 12646(a). As the respondent explains, "inadvertently allowing Reservists to enter

3

Navy originated the waiver in the wrong office, *id.* ¶¶ 56–64, did not include a justification in the waiver for selecting Fourte as the "only qualified" reserve member for the Africa assignment, *id.* ¶ 66, included an incorrect endorsement, *id.* ¶¶ 80–84, failed to obtain Fourte's signature to verify his total active duty service time, *id.* ¶¶ 56–64, 85–90, and prepared the waiver in the wrong format, *id.* ¶¶ 91–98.

The Navy offered Fourte an "opportunity to present his objections" to the waiver paperwork to a Special Cases Board, but he rejected this offer. Resp't's Resp. at 6; Packard Decl. ¶ 9. Instead, Fourte "attempted to resolve this matter with the [respondent] by utilizing [his] chain-of-command and separately by filing a formal Complaint of Wrongs under Article 1150 of the Navy Regulations." Pet'r's Decl. ¶ 18. Fourte, who has a law degree, retained counsel for his Article 1150 complaint, which was filed on July 16, 2018. Pet. ¶¶ 14, 38.

### B. Fourte's First Habeas Petition

While Fourte's Article 1150 complaint was pending, *id.* ¶ 42, and before his deployment to Africa, Pet'r's Decl. ¶ 26, he filed his first habeas petition in this Court on August 7, 2018. Compl. for Declaratory and Injunctive Relief ("First Habeas Petition") at 1, *Fourte v. Spencer*, No. 18-cv-1847 (D.D.C. Aug. 7, 2018), ECF No. 1. This First Habeas Petition sought a declaration of his mobilization as unlawful, arguing that the Navy violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, because the waiver "did not comply with [the Navy's] own directives and decision processes and did not justify why [Fourte] is the only qualified candidate." *Id.* On the same day, he also filed a motion for a preliminary injunction to enjoin

---

'sanctuary' status can present a significant windfall for the officer, but also an unexpected expense for the Navy." Resp't's Resp. at 3. The waiver process affords the Navy an opportunity to review a Navy Reserve officer's accumulated active duty time before the issuance of orders to avoid inadvertently allowing the Reservist to enter "sanctuary" status, with the concomitant expense for the Navy of regular active-duty retirement pay. *See* Resp.'t's Resp., Ex. C., Chief of Naval Operations Instruction 1001.27 ¶¶ 1, (5)(f), ECF No. 9-3 (explaining that the waiver process "establishes policy and procedures . . . to ensure all entry into sanctuary or earning of a regular retirement is the result of planned actions necessary to meet the needs of the Navy").

the Navy from enforcing its mobilization orders. Mot. for Prelim. Inj. at 1, 3, *Fourte v. Spencer*, No. 18-cv-1847 (D.D.C. Aug. 7, 2018), ECF No. 2. The action was transferred, *sua sponte*, because at that time, Fourte was stationed at Fort Jackson in South Carolina, and as a result, jurisdiction over the petition was appropriately placed in the District of South Carolina. *See* D.D.C. 2018 Transfer Order at 4–6 (citing *Rooney v. Sec'y of the Army*, 405 F.3d 1029, 1032 (D.C. Cir. 2005)).

### C. D.S.C.'s Dismissal of Fourte's First Habeas Petition

After the action was transferred, a magistrate judge in South Carolina recommended, on August 12, 2018, that the district court dismiss Fourte's action. *See* D.S.C. Magistrate's 2018 R&R, at *1. This recommendation was adopted, and the district court denied Fourte's motion for a preliminary injunction and dismissed his habeas action without prejudice. *See* D.S.C. 2018 Dismissal Order, at *1. Specifically, the D.S.C. 2018 Dismissal Order concluded that Fourte's claim was not justiciable because "a civilian court is not permitted to review an internal military decision unless a service member demonstrates . . . (1) 'an allegation of the deprivation of a constitutional right, or an allegation that the military has acted in violation of applicable statutes or its own regulations,' and (2) an 'exhaustion of available intraservice corrective measures,'" *id.* at *2 (quoting *Williams v. Wilson*, 762 F.2d 357, 359 (4th Cir. 1985)). That court concluded that Fourte had failed to satisfy either requirement. *Id.* at *2–3. Fourte's motion for reconsideration was also denied. *Fourte v. Spencer*, No. 18-cv-2212, 2018 WL 3980209, at *1–3 (D.S.C. Aug. 21, 2018) ("D.S.C. 2018 Order Denying Reconsideration").

5

### D. Fourte's Pending Habeas Petition

After his deployment to Africa, Fourte filed the pending petition for a writ of habeas corpus in this Court. *See generally* Pet.[2] This second petition contains nearly identical allegations to those in the first habeas petition. Fourte again alleges that the Navy violated the APA by failing to comply with its procedures for issuing a waiver and did not include a justification for choosing him in the waiver. *See* Pet. ¶¶ 45–98 (alleging APA violations in seven counts because, in Fourte's view, the Navy did not process his waiver paperwork correctly). Although the instant petition also contains Fifth Amendment Due Process claims, these new claims are predicated on the same arguments that the waiver was not prepared in compliance with the Navy's procedures. *See* Pet. ¶¶ 99–137 (alleging Due Process violations in three counts, based on allegations that the waiver was not processed properly, and that Fourte disagrees with how the respondent and respondent's counsel described, in the D.S.C. action, the Navy's justification for choosing to deploy him to Africa).

Following the Court's issuance of an Order to Show Cause, *see* Order Directing Respondent to Show Cause, ECF No. 4; *see also* Min. Order (Nov. 1, 2018) (directing Fourte to file any reply), the respondent responded to the petition, and Fourte filed a reply, *see generally* Resp't's Resp.; Pet'r's Reply to Resp't's Resp. ("Pet'r's Reply"), ECF No. 11. The petition for a writ of habeas corpus is now ripe for resolution.

---

[2] A "district court has jurisdiction over a habeas petition 'only if it has jurisdiction over' the petitioner's custodian." *Rooney*, 405 F.3d at 1032 (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 442 (2004)). The Supreme Court has "relaxed [this] district of confinement rule when 'American citizens confined overseas (and thus outside the territory of any district court) have sought relief in habeas corpus,'" *Padilla*, 542 U.S. at 447 n.16 (quoting *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 498 (1973)), allowing such "petitioner[s] to name as respondent a supervisory official and file the petition in the district where the respondent resides," *id*. Accordingly, the instant habeas petition is appropriately filed in this Court, now that Fourte is currently deployed overseas and the respondent is a supervisory official residing in Washington, D.C. *See* Pet. ¶ 2.

## II. LEGAL STANDARD

A serviceman who seeks a declaration that "orders calling him to active duty are invalid," in fact seeks "from the federal courts [] a writ of habeas corpus." *Rooney*, 405 F.3d at 1031 (internal quotation marks omitted). Indeed, "the writ of habeas corpus has long been recognized as the appropriate remedy for servicemen who claim to be unlawfully retained in the armed forces." *Parisi v. Davidson*, 405 U.S. 34, 39 (1972); *see also Strait v. Laird*, 406 U.S. 341, 351 (1972) (concluding that a reservist called to active duty is "in custody" for habeas purposes under 28 U.S.C. § 2241). "[H]abeas corpus is [the petitioner's] exclusive remedy," because "a party who can petition for a writ of habeas corpus may not instead seek a declaratory judgment." *Rooney*, 405 F.3d at 1031; *see also Monk v. Sec'y of the Navy*, 793 F.2d 364, 366 (D.C. Cir. 1986) (explaining that a petitioner "may not avoid the requirement that he proceed by habeas corpus by adding a request for relief that may not be made in a petition for habeas corpus").

A writ of habeas corpus is an "extraordinary remedy," *Bousley v. United States*, 523 U.S. 614, 621 (1998), and "[o]rderly government requires that the judiciary be as scrupulous not to interfere with legitimate [military] matters as the [military] must be scrupulous not to intervene in judicial matters." *Blevins v. Orr*, 721 F.2d 1419, 1421 (D.C. Cir. 1983) (second and third alterations in original) (quoting *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953)).

## III. DISCUSSION

Fourte alleges that the waiver permitting his mobilization to active duty in Africa is invalid because the Navy failed to follow its own procedures when issuing the waiver in his case. Pet. at 1. Regardless of the merits of this allegation, Fourte's claims are dismissed for two reasons. First, Fourte's requested relief—demobilization and reassignment within the Navy by judicial decree—cannot be afforded, and as a result, his claims must be dismissed as non-

justiciable. Second, even if the requested relief could be afforded, Fourte has not exhausted his intraservice remedies, which is required before his claims may be raised in federal court. Each of these reasons is discussed in more detail below.

### A. Fourte's Request for Reassignment of His Naval Duties by Judicial Decree Is Not Justiciable

Fourte requests a writ of habeas corpus that would (1) "require[e] the respondent to demobilize" him, (2) "declar[e] that the Africa mobilization orders are unlawful," *see id.* at 31 (Demand for Relief), and (3) "restore" Fourte "to [his] previous duty" assignment at the Washington Navy Yard in Washington, D.C., *see* Habeas Form at 8 (Request for Relief); *see also* Pet'r's Reply at 26. In effect, then, Fourte asks the Court, in the form of a writ of habeas corpus, to countermand and revise his active duty orders issued by the Navy and issue a new order assigning him to another duty station. The law is well-settled, however, that a writ of habeas corpus cannot be used to "revise duty orders as to one lawfully in the service." *Orloff*, 345 U.S. at 94.

In *Orloff v. Willoughby*, a doctor in the Army requested, through a petition for a writ of habeas corpus, "judicial review of his assignments to duty." *Id.* at 92. The Supreme Court ruled that it was beyond the Court's power, by habeas corpus, "to determine whether specific" non-medical tasks were appropriately assigned to the doctor, because "judges are not given the task of running the Army," and "[e]ach doctor in the Army cannot be entitled to choose his own duties." *Id.* at 92–93. Thus, while habeas corpus may be used "to determine whether one has been lawfully inducted and is therefore within the jurisdiction of the Army and subject to its orders," *id.* at 94, the Court made clear that "it is not within the power of this Court by habeas corpus to determine whether specific assignments to duty fall within the basic classification of petitioner," *id.* at 93. Since "[n]othing appears to convince us that he is held in the Army

unlawfully, and, that being the case," the Court declined to exercise jurisdiction, observing doing so "would be a disruptive force as to affairs peculiarly within the jurisdiction of the military authorities." *Id*. at 94–95.

Just like the doctor in *Orloff*, Fourte is here requesting revision of his active duty orders, a purpose for which a writ of habeas corpus may not be issued. He attempts to distinguish *Orloff*, claiming he is not "lawfully in the service," because in his view, the Navy did not follow its procedures in securing a waiver to order him to active duty in Africa. *See* Pet'r's Reply at 22 (quoting *Orloff*, 345 U.S. at 94). Notwithstanding this assertion, Fourte concedes that he is a reservist, *id.* at 1, that the Navy may recall reservists to active duty, *see id.* at 8 ("It is undisputed that the military may recall reservists."), and that he seeks to remain on active duty orders, albeit in a different location that he prefers, *id.* at 26 (requesting restoration to his premobilization assignment in Washington, D.C.). Thus, despite being lawfully in Naval service and subject to the Navy's orders, Fourte is asking the Court to interfere with military matters by finding the Secretary's decisionmaking process in issuing the deployment order to him to be unjustified and incorrect, and thereby to have this Court substitute its judgment for that of the Secretary. This is contrary to the instruction in *Orloff*.

Moreover, following *Orloff*'s guidance, the D.C. Circuit has explained "[t]he Constitution vests '[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force' exclusively in the legislative and executive branches." *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1511 (D.C. Cir. 1989) (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973) and citing *Orloff*, 345 U.S. at 93–94). Consistent with this teaching, the D.C. Circuit has repeatedly ruled that "military personnel decisions" are "nonjusticiable" when "grant[ing] such relief would require" a court to "second-guess the

9

[military's] decision about how best to allocate military personnel in order to serve the security needs of the Nation." *Id.* at 1511; *see also, e.g.*, *Wilson v. James*, No. 15-5338, 2016 WL 3043746, at *1 (D.C. Cir. May 17, 2016) (affirming non-justiciability of review of a "disciplinary action reprimand[ing]" a serviceman for failing to give superior officer the "dignity and respect due his office"); *Schamburg v. White*, 63 F. App'x 526, 526 (D.C. Cir. 2003) (review of denial of promotion was non-justiciable); *Cargill v. Marsh*, 902 F.2d 1006, 1007 (D.C. Cir. 1990) (denying writ of mandamus to compel Army to reassign petitioner within the Army).

For example, in *Kreis*, the D.C. Circuit reviewed an Air Force Major's request for a retroactive promotion in the military, based on the claim that his military record contained inaccuracies that prejudiced his promotion application. *Kreis*, 866 F.2d at 1510. The D.C. Circuit affirmed the district court's dismissal of the Air Force Major's request for a promotion "by judicial decree" as "nonjusticiable," reasoning that the court was "not competent to compare" the Air Force Major with "other officers competing for such a promotion," a task "unsuitable to the judicial branch." *Id.* at 1511.

Here, similar to the request for a promotion in *Kreis*, Fourte seeks, by judicial decree, reassignment of his duties, *see* Pet'r's Reply at 26, based on his assertion that he is not the "only qualified candidate in the entire reserve force" for the Africa assignment, Pet. at 1; *id.* ¶ 27. As in *Kreis*, Fourte's challenge to the Navy's justification for his deployment "falls squarely within the realm of nonjusticiable military personnel decisions." *Kreis*, 866 F.2d at 1511. Indeed, the pending petition has put the Navy in the position of having to justify its personnel action regarding Fourte, namely that Fourte's position, Officer in Charge, is "[r]esponsible for the overall safety, security, and well-being of the [base] and all troops therein," Resp't's Resp. at 5,

and Fourte was chosen as the only qualified Reservist after the Navy advertised this position and had no volunteers, *see* Packard Decl. ¶ 4. Fourte was the "first fully-qualified Sailor on the list of the top 10 qualified Sailors to fill this position," and the only officer who satisfied the "command experience requirement" and held the required security clearance. *Id.* ¶ 8; *see also* Resp.'t's Resp. at 16–17. Fourte himself touts his qualifications for the position to which he was deployed, stating that he has "served on active duty longer than 95% of his peers of equal rank," is one of "few candidates" with a "JD, MBA, and large-scale corporate financial experience," and has previously been chosen by the Navy for overseeing a "DOD-wide Congressionally mandated financial audit." Pet. ¶¶ 12–14. The Navy's choice of Fourte as the most-qualified Reservist for the Officer in Charge position, therefore, is unsurprising, and is well beyond this Court's power to "second-guess" the Navy's "decision about how best to allocate military personnel in order to serve the security needs of the Nation," a task "unsuitable to the judicial branch." *Kreis*, 866 F.2d at 1511.

Faced with *Orloff*, *Kreis*, and their progeny, Fourte switches gears and claims he is not challenging the Navy's choice to deploy him, but rather the process by which the Navy obtained a waiver to order him to active duty in Africa. *See* Pet'r's Reply at 8 (explaining the issue is not "who" the Navy mobilized, but "how" Fourte was mobilized). Claims requiring the "court to determine only whether the [military's] decision making process was deficient," and not whether a military personnel decision "was correct," have been found to be justiciable. *Kreis*, 866 F.2d at 1511. For example, a court may consider a "more modest request" to review "the reasonableness" of the military's decision not to correct a serviceman's military record. *Id.*

Nonetheless, Fourte's recharacterization of his claims as merely challenges to the Navy's

waiver process cannot save his habeas petition. He has not sought any remedy for the alleged deficiencies he identified in the Navy's process for ordering him to active duty by, for example, requesting re-processing of his waiver paperwork. *See generally* Pet. Instead, far from a "modest request" to have his waiver paperwork reprocessed, *Kreis*, 866 F.2d at 1511, Fourte asks the Court to interfere with the Navy's personnel decisions and order that he be reassigned within the Navy to active duty in Washington, D.C. Fourte's claims for relief, therefore, are not justiciable, and accordingly, must be dismissed.

B.  **Fourte's Claims Are Barred For Failure to Exhaust Intraservice Remedies**

Even if Fourte's claims were justiciable under *Orloff*, *Kreis*, and their progeny, he has failed to show that he exhausted his intraservice remedies because he has failed to present his objections to the waiver to the Special Cases Board, and his habeas petition is barred, as a result.

As the D.S.C. 2018 Dismissal Order concluded, exhaustion of intraservice remedies, including presentation of objections to the Special Cases Board, is required for Fourte's claims to be reviewed in federal court. *See* D.S.C. 2018 Dismissal Order, at *3.[3] Indeed, "a court should

---

[3] The D.S.C 2018 Dismissal Order ruled that Fourte's First Habeas Petition was "not justiciable" because exhaustion of intraservice remedies is required, and, although Fourte "ha[d] a pending action under Article 1150 of the Navy Regulations," he "failed to utilize an opportunity to present any personal issues with the deployment . . . to the Special Cases Board." D.S.C 2018 Dismissal Order, at *3; *see also* D.S.C. 2018 Order Denying Reconsideration, at *3 (denying Fourte's motion for reconsideration because he had "not exhausted his intraservice remedies"). The respondent correctly points out that this exhaustion requirement may not be re-litigated here because of issue preclusion, since "(1) the same issue was 'contested by the parties and submitted for judicial determination in [a] prior case,' (2) the issue was 'actually and necessarily determined by a court of competent jurisdiction in that prior case,' and (3) preclusion does not result in 'basic unfairness to the party bound by the first determination.'" *Scahill v. District of Columbia*, 909 F.3d 1177, 1181 (D.C. Cir. 2018) (alterations in original) (quoting *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992)); *see also* Resp't's Resp. at 7 (citing *Martin v. DOJ*, 488 F.3d 446, 454 (D.C. Cir. 2007)). Fourte only contests the third requirement, arguing that preclusion would be unfair to him, because the D.S.C. 2018 Dismissal Order dismissed his first action "without prejudice," and as a result, he has not yet had the opportunity to litigate the merits of his claims. Pet'r's Reply at 3. Issue preclusion, however, applies to "threshold jurisdictional issues," *Nat'l Ass'n of Home Builders v. EPA*, 786 F.3d 34, 41 (D.C. Cir. 2015), such as the exhaustion requirement on which D.S.C. already ruled. Even though the D.S.C. 2018 Dismissal Order's dismissal for failure to exhaust did not "adjudicate the merit[s]," the decision did "adjudicate the court's jurisdiction," and the pending petition "cannot command" re-consideration of the same issue unless Fourte shows that he has since "cured" the original jurisdictional defect. *Id.* (internal quotation marks omitted) (quoting *GAF Corp. v. United States*, 818 F.2d 901, 912 & n.72 (D.C. Cir. 1987)). Fourte still has not

12

not review internal military affairs in the absence of . . . exhaustion of available intraservice corrective measures," *Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) (internal quotation marks and citation omitted), because "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers," *id.* (internal quotation marks omitted) (quoting *Chappell v. Wallace*, 462 U.S. 296, 300 (1983)); *see also New v. Cohen*, 129 F.3d 639, 641 (D.C. Cir. 1997) (stating the "basic principle of comity" that "service members subject to military discipline must exhaust their military remedies before seeking collateral review in federal court"). Here, Fourte still has not presented his waiver objections to the Special Cases Board, and his decision to forego this intraservice remedy bars him from bringing the instant claims in federal court. *See* Resp't's Resp. at 6; Packard Decl. ¶ 9.[4]

Fourte correctly notes that in the D.C. Circuit, the exhaustion requirement does not apply if exhaustion would be "futile" or lead to "irreparable harm." *Bois*, 801 F.2d at 468; *see also* Pet'r's Reply at 4; Pet'r's Decl. ¶¶ 24, 25. Although Fourte may not relitigate this issue here because the D.S.C. 2018 Dismissal Order already ruled that exhaustion is required, Fourte nevertheless does not qualify for either exception to exhaustion. Fourte states his belief that submitting objections to the Special Cases Board would be futile because such review is for "personal matters and not violations of federal regulations by the Navy," but the declaration on

---

exhausted his intraservice remedies, as discussed in this section, and therefore, his petition is barred on this ground as well.

[4] The petitioner states that the Navy "completed its investigation" in response to his Article 1150 complaint, concluding the petitioner could not bring that complaint because it was filed against a serviceman who was not "superior in rank or position." *See* Decl. Supp. Pet'r's Reply ("Pet'r's Reply Decl.") (Nov. 17, 2018) ¶ 55, ECF No. 11-1. This fact does not establish that Fourte has exhausted his intraservice remedies, however, because Fourte has not availed himself of the intraservice remedy that the Navy offered to him, which was to present his objections to the Special Cases Board.

13

which he relies for that assertion explains that Special Cases Board requests may be broader, reaching "legal" issues, stating this avenue of administrative review is "available to Sailors who have significant personal, legal, . . . or other issues that could affect their mobilization, or require special consideration." *See* Pet'r's Reply at 3 (citing Packard Decl. ¶ 9). Thus, Fourte has advanced "no reason . . . to suggest that the Board lacks the power to provide [Fourte] with complete relief or that it would not fairly consider all [his] claims." *Bois*, 801 F.2d at 468.

Fourte's contention that he will be irreparably harmed if he is required to exhaust intraservice remedies fares no better. *See* Pet'r's Decl. ¶ 27(c). Fourte argues that exhaustion creates irreparable harm for him because exhaustion lengthens the time he will be deployed abroad. He concedes, however, that he is not challenging the Navy's authority or decision to deploy him to Africa. Pet'r's Reply at 8. Rather, the alleged wrong is in "how" the Navy processed his waiver paperwork, *id.*, and Fourte has not shown any irreparable harm stemming from the alleged paperwork errors. If Fourte succeeded on the merits of his challenges to the Navy's waiver process, the Navy, for example, could reprocess the waiver for his Africa assignment, and the alleged harm would be fixed. Exhaustion of intraservice remedies does not create irreparable harm for Fourte, and is required, as the D.S.C. 2018 Dismissal Order already ruled. Fourte still has not exhausted his intraservice remedies, and, accordingly, his habeas petition is dismissed.[5]

---

[5] The respondent argues that Fourte's claims should also be dismissed because Fourte has failed to state a claim under the APA and Due Process Clause of the Fifth Amendment. *See generally* Resp't's Resp. These arguments need not be discussed further because the petition is dismissed on several other grounds.

## IV. CONCLUSION

For the reasons discussed above, Fourte's Petition for a Writ of Habeas Corpus, ECF No. 1, is dismissed. An Order consistent with this Memorandum Opinion will be entered contemporaneously.

Date: January 28, 2019

_____
BERYL A. HOWELL
Chief Judge